IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

November 25, 2020
ST-2018-MC-00081
**TAMARA CHARLES**
**CLERK OF THE COURT**



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| **JENSEN ALEXANDER,** | ) **CASE NO. ST-2018-MC-00081** |
| | ) (Super. Ct. Case No. ST-2009-CR-00526) |
| Petitioner, | ) |
| | ) |
| -vs- | ) **PETITION FOR WRIT OF** |
| | ) **HABEAS CORPUS** |
| **GOVERNMENT OF THE VIRGIN ISLANDS** | ) |
| **and WYNNIE TESTAMARK in her capacity** | ) |
| **as Director of the VIRGIN ISLANDS BUREAU** | ) |
| **OF CORRECTIONS,** | ) |
| | ) |
| Respondents. | ) |

Cite as: 2020 VI Super 97U

## MEMORANDUM OPINION & ORDER

### I.   INTRODUCTION

**¶1**    **THIS MATTER** is before the Court on *pro se* Petitioner Jensen Alexander's Writ of Habeas Corpus Pursuant to a Sixth Amendment Violation of Speedy Trial Act. The Writ was granted by Order entered June 26, 2020. Subsequent to Respondent's Return, dated July 22, 2020, Petitioner filed a Traverse to Respondent's Return ("Traverse") which was received by the Court on August 13, 2020. The Petitioner is *pro se* and, therefore, the Court will liberally construe his pleadings.[1] Petitioner alleges in his Traverse that:

1)   The Government failed to try the accused within the statutory time frame (70 Days) of the federal Speedy Trial Act; and

2)   The 27-month delay between arrest and trial violates Petitioner's Sixth Amendment constitutional right to a speedy trial.

**¶2**    This matter is fully briefed and the Court has, necessarily, reviewed the record of proceedings in *People of the Virgin Islands v. Jensen Ken Alexander*, Case No. ST-2009-CR-526. Pursuant to Rule 2(g)(1) of the Virgin Islands Habeas Corpus Rules, the Court finds that an evidentiary hearing is not necessary in this matter because the submissions before Court reveal absolutely no factual disputes that are material to the disposition of the issues raised in the Petition.

---

[1] *See, Carrillo v. CitiMortgage, Inc.*, 63 V.I. 670, 679 (V.I. 2015) (quoting *Etienne v. Etienne*, 56 V.I. 686, 691 n.5 (V.I. 2012)); *Donovan v. Virgin Islands*, 2013 V.I. LEXIS 21, at \*7 (V.I. Super. Ct. 2013).

## II.     ANALYSIS

### A.     Alleged violation of statutory time frame

¶3     As to the first allegation, Alexander's Petition relies upon the federal Speedy Trial Act.[2] However, the Speedy Trial Act applies to federal district courts and not to proceedings in the Superior Court of the Virgin Islands.[3] The Virgin Islands Supreme Court has stated that:

> "Rather than precise time limits established by typical statutory Speedy Trial Acts, a violation of the Sixth Amendment right to a speedy trial is determined by a four-factor balancing test: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) and prejudice to the defendant."[4]

¶4     Thus, Petitioner's first allegation must necessarily fail, as the seventy-day period outlined in 18 U.S.C. § 3161 is inapplicable to the Superior Court of the Virgin Islands.[5]

### B.     Alleged Sixth Amendment Violation

¶5     As to Petitioner's second claim resting on constitutional grounds, the Court reviews this claim under the four-part test listed above.[6] The United States Supreme Court stated in *Barker v. Wingo*,[7] "[w]e regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."[8]

#### 1.     Length of Delay

¶6     The length of the delay is considered to be a "triggering mechanism."[9] The Virgin Islands Supreme Court has previously stated that "a delay over 12 months is presumed to be sufficiently prejudicial to require evaluation of the three remaining factors."[10]

---

[2] 18 U.S.C. §§ 3161- 3174.

[3] *Francis v. People*, 63 V.I. 724 (V.I. 2015).

[4] *Francis v. People,* 63 V.I. 724, 746 (V.I. 2015) (citing *Carty v. People*, 56 V.I. 345, 364 (V.I. 2012)).

[5] *Id.* Petitioner also states in the Traverse that "Attorney Judith Bourne had hundreds of days to file a motion to dismiss because of speedy trial violation, which she failed to do." Trav. 2. Even liberally construing this statement as a claim of ineffective assistance of counsel, such a claim must also necessarily fail because the federal Speedy Trial Act does not apply here. Further, this assertion is not supported by the record – Attorney Bourne did in fact file a Motion to Dismiss on October 5, 2011.

[6] *Id.*

[7] 407 U.S. 514 (1972).

[8] *Id.* at 533.

[9] *Barker*, at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which

¶7     Alexander was arrested on October 14, 2009, and subsequently charged with several crimes including rape and murder arising from events that occurred on October 14, 2009. Jury selection started on January 23, 2012, and the first day of trial was January 30, 2012. The trial continued on January 31, February 1, 2 and 3, 2012. This is a period of 837 days. This is a substantial time amount of time and therefore triggers the Court to consider the other three factors.

## 2.     Reason for the Delay

¶8     For the second factor, the Court must consider which party is primarily responsible for the delay and why – whether it is the Court, the People, or the Defendant.[11] Delays attributed to the People weigh in favor of the Petitioner's claim.[12] Further, the reason for the delay "impacts the weight given to a particular delay."[13] For example, a deliberate attempt by the People to hamper the case should be weighed heavily, while neutral or institutional reasons, like an overcrowded docket, should be weighed less heavily.[14]

¶9     The first set of delays can be attributed to the Court. On November 3, 2009, November 10, 2009, and November 18, 2009, three different judges had to recuse themselves from the case. Jury selection was then scheduled for February 16, 2010. These delays were both short and a result of institutional reasons and therefore considered minor.

¶10     The next set of delays was a result of pending motions by the other defendant in the case to sever and a renewed bail motion, as well as outstanding discovery – namely the results of DNA testing from the FBI. On January 25, 2010, the Court rescheduled jury selection to April 12, 2010 with a pretrial conference on March 15, 2010. The issue of the outstanding discovery can be attributed as a delay of the People, although seemingly not deliberate as they were awaiting a response from the FBI, but the delay caused by the other defendant cannot be attributed to them.

¶11     At a March 15, 2010 pretrial conference, the People indicated that hair and fingerprint analysis was complete, but they were still waiting on other DNA testing which they expected would be completed by the end of May. Petitioner filed a Renewal of his *Ex Parte* Motion for Leave to Hire Investigator. The Court granted Petitioner's motion and indicated they would need to file a proposed order allocating funds for the investigation. Thus, the Court moved jury selection from April 12, 2010, to June 7, 2010. Here it was Petitioner's desire to further investigate which delayed proceedings, thus this delay can be attributed to Petitioner.

---

is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.")

[10] *Rivera v. People*, 64 V.I. 540 (V.I. 2016) (citing *Carty*, 56 V.I. at 365).

[11] *See, Francis v. People*, 63 V.I. 724, 748-49 (2015) (analyzing delays attributed to the People, the public defender, and the Superior Court itself).

[12] *Id.* at 748.

[13] *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

[14] *United States v. Benjamin*, 816 F. Supp. 373, 382 (D.V.I. 1993) (citing *Barker*, 407 U.S. at 530).

¶12     On May 10, 2010, at a pretrial conference, Petitioner made an oral motion that a portion of Defendant's bail be used for electronic monitoring and the other defendant made a Motion for Alternative Modification of Conditions of Release. The Court indicated that Petitioner should file a written motion and moved jury selection from June 7, 2010, to September 27, 2010, with a pretrial conference set for August 30, 2010. Petitioner's desire for electronic monitoring and the need to file a written motion resulted in this delay and can be attributed to Petitioner.

¶13     Hurricane Earl caused the cancelation of the August 30, 2010 pretrial conference, which was moved to September 8, 2010. On September 8, 2010 Petitioner's pre-trial release was granted. Because the Medical Examiner, Dr. Landron, was on leave until after January 1, 2011, Respondents filed for a continuance on September 14, 2010. The Court then continued the trial from September 27, 2010, to March 14, 2011, with a pretrial conference set for February 28, 2011. This delay can be attributed to the People.

¶14     On February 23, 2011, Petitioner filed a Motion for Discovery and on March 2, 2011, Petitioner filed, *pro se*, a Motion to Change Counsel. On March 14, 2011, Petitioner filed a Motion to Continue Jury Selection and Trial, while on the same day the Court conducted jury selection and *voir dire*. The Court also conducted a hearing regarding Petitioner's *pro se* motion to change counsel and denied it. Trial was moved to March 28, 2011. These delays can be attributed to the Petitioner.

¶15     On March 16, 2011, Petitioner Filed an *Ex Parte* Motion to Hire Forensic Pathologist, indicating he would not be prepared for trial until at least April. This motion was granted on March 23, 2011. A pretrial conference was scheduled for May 2, 2011. Because of the expiration of the term for the jurors, new jury selection was made for July 5, 2011, with the possibility of moving it up to May 9, 2011, or May 27, 2011, depending on Court scheduling. This delay may be attributed to the Petitioner.

¶16     Petitioner filed a Motion for Additional Discovery on April 26, 2011. At a pretrial conference on May 2, 2011, the Court ordered that the July 5, 2011 jury selection date be kept and all discovery be finished by the end of the month. Petitioner filed another Motion for Continuance of Trial on June 23, 2011, which was granted on July 1, 2011. Jury selection was rescheduled for August 29, 2011, with a pretrial conference on August 5, 2011. This delay may be attributed to the Petitioner.

¶17     At the pretrial conference on August 5, 2011, the Petitioner indicated that he had filed a Motion in Limine on August 3, 2011. The People indicated that they would both need time to respond to the Motion in Limine and that they were not ready for trial as they were still waiting on DNA evidence from the FBI. The Petitioner indicated that if the Motion in Limine were granted he would be ready for trial but would not be if it were denied. The Court noted its concern with how long the Petitioner had been incarcerated but moved jury selection to October 24, 2011, with a pretrial conference on October 5, 2011. Here both parties indicated they may not be ready for trial,

and Petitioner's filing date of his Motion in Limine gave the People little time to respond before the conference.

¶18     On October 5, 2011, at the pretrial conference, Petitioner indicated he had filed a Motion to Dismiss for violation of his speedy trial right. The Court expressed concern that should Defendant be released, his presence could not be secured should the People refile, but also noted concern for the length of time Petitioner had been incarcerated. The Court ordered the People to notify the FBI that the matter would go to jury selection on January 9, 2012, and scheduled a pretrial conference for December 5, 2011, with jury selection on January 9, 2012. This delay may be weighed against the People.

¶19     On October 19, 2011, the Court issued an order pushing jury selection back from January 9, 2012 to January 23, 2012. It is not clear from the record why this change in date occurred as no motions or hearings occurred in between October 5 and October 19. However, this is a relatively minor and institutional delay. This trial date was confirmed at the December 5 pretrial conference, jury selection was held on January 23, 2012, and the trial began on January 30, 2012

¶20     Many of the resulting delays were due to Petitioner's motions and, on two occasions — including once when jury selection had already begun — continuances requested by the Petitioner. A few delays of relatively minor time can be attributed to the Court and neutral institutional reasons, and once due to a hurricane, a completely neutral reason. Fewer reasons for delay can be attributed to the People, but they include one continuance and delays in receiving and providing DNA evidence from the FBI. These delays by the People do not appear deliberate. This *Barker* factor weighs in favor of the People.

¶21     Petitioner asserts that because the People were represented at times by different Assistant Attorney Generals that this delayed his case.[15] There is no evidence on the record that any delay or continuance was due to the inability of the People's counsel to get up to speed before a scheduled conference or hearing. Finally, Petitioner asserts that no delays can be attributed to him. He states in his Traverse that he had an attorney and the attorney's actions cannot be imputed to him.[16] As the United States Supreme Court stated in *Link v. Wabash Railroad Co.*,[17] "each party is deemed bound

_____

[15] Trav. 3. ("The Government of the V.I. . . . forgot to mention that because when they appoint a new attorney general on the case that sets back the case for several weeks because the new prosecutor now have [sic] to learn and study the case.")

[16] Trav. 2-3 ("The facts [sic] is Jensen had an attorney who was responsible for all of the filings to the court

. . . .

All actions taken by Jensen appointed attorney . . . was not Jensen responsibility, or his fault.

. . . .

The burden of the delays rest on . . . appointed counsel Judith Bourne actions, at no point was Jensen ever responsible for what was being filed in court.")

[17] 370 U.S. 626 (1962).

by the acts of his lawyer-agent."[18] The Court recognizes Petitioner's attempts to change his attorney after a year and a half due to an alleged breakdown in communication, however this motion was heard by the judge and denied without prejudice. While the Court is mindful of the plight of the indigent defendant, Petitioner chose to exercise his constitutional right to an attorney[19] and not to proceed *pro se*. This does not change the attorney-client agent relationship and Petitioner's choice to exercise his constitutional right cannot later be used to laterally attack his conviction.

### 3.      The Petitioner's Assertion of His Right to Speedy Trial

¶22      The third *Barker* factor the Court considers is whether the Petitioner here asserted his rights to a speedy trial.[20] As the Supreme Court of the Virgin Islands stated in *Carty v. People*,[21] the defendant shows he has asserted his right "when he is represented by counsel and he can identify a motion or evidence of direct instructions to his counsel to assert that right at a time when a formal assertion of his rights would render some chance of success."[22] Further, "a defendant's claim that the right is being violated provides strong evidence that it actually was violated."[23]

¶23      The Petitioner was arraigned on October 22, 2009. While the record indicates Petitioner requested a jury trial, it does not indicate whether Petitioner at that time asserted his right to a speedy trial. On October 5, 2011, Petitioner filed with the Court a Motion to Dismiss for violation of his speedy trial right. This motion was filed nearly two years after Petitioner's arraignment and can be considered as having had some chance of success for that reason. Although the motion was denied, Petitioner here can satisfy this *Barker* factor by pointing to this motion, and it weighs in favor of the Petitioner.

### 4.      Prejudice to the Defendant

¶24      The fourth *Barker* factor requires the Court to assess prejudice to the defendant caused by a speedy trial violation.[24] Whether the defendant experienced actual prejudice as a result of a speedy trial violation is the most important factor.[25] Prejudice here is determined by looking at the three interests the speedy trial right was created to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."[26]

---

[18] *Id.* at 634 (citing *Smith v. Ayer*, 101 U.S. 320 (1879)).

[19] U.S. Const. amend. VI.

[20] *Francis v. People*, 63 V.I. 724, 752 (2015) (citing *Carty*, 56 V.I. at 366).

[21] 56 V.I. 345 (V.I. 2012).

[22] *Id.*

[23] *United States v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009) (citing *Barker*, 407 U.S. at 531-32).

[24] *Francis,* 63 V.I. at 753.

[25] *Francis,* 63 V.I. at 746.

[26] *Id.* (quoting *Carty*, 56 V.I. at 367).

¶25     As for the first interest, the Third Circuit has recognized that "though time alone may, in some cases, rise to the level of 'oppressive pretrial incarceration,' credit for time served 'mitigate[s] the potential oppressive effects of . . . incarceration.'"[27] In terms of the second interest, the Third Circuit recognized in *United States v. Dreyer*[28] that "a certain amount of anxiety is inevitable in a criminal case." [29] Further, "[v]ague allegations of anxiety are insufficient."[30] The United States Supreme Court has recognized that the third interest is "the most serious . . . because the inability of a defendant to adequately prepare his case skews the fairness of the entire system."[31] Lastly, the burden of proving prejudice lies with Petitioner.[32]

¶26     The Petitioner here was granted pre-trial release on January 28, 2010, upon the posting of a $150,000 cash bail, although the Petitioner did not end up posting bail. Petitioner received credit for the full time he spent detained prior to trial. Nor was the length of time here excessively oppressive.[33] As for the second interest, at no point in Petitioner's initial Petition or Traverse does he assert any level of anxiety beyond a generalized assertion in his Petition that "inordinate delay . . . may . . . create anxiety in him, his family and his friends."[34] This assertion, while not only vague, is utterly lacking in any evidence or circumstance, let alone those severe enough to warrant a finding in Petitioner's favor.[35]

¶27     The third interest runs against the Petitioner. Petitioner asserts that he suffered prejudice because his co-defendant "took a plea deal"[36] and that the delay gave his co-defendant "enough time to fabricate a bogus story against Jensen."[37] These reasons are not impairments to Petitioner's defense caused by delay. That a co-defendant may find it in his or her interest to negotiate a plea with the prosecution is a separate issue entirely from a defendant's pre-trial detention. That an adversarial witness may be untruthful or had the time and ability to fabricate false testimony is also

---

[27] *Hakeem v. Beyer*, 990 F.2d 750, 762 (3d Cir. 1993) (quoting *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984)).

[28] 533 F.2d 112 (3d Cir. 1976).

[29] *Id.* at 116. In *Dreyer*, the Third Circuit recognized that the defendant's feelings of helplessness, anxiety, depression, and isolation, culminating in a suicide attempt, was beyond the inevitable anxiety a criminal defendant feels. *Id.* at 116-17.

[30] *Hakeem*, 990 F.2d at 762.

[31] *Doggett v. United States*, 505 U.S. 653 (citing *Barker*, 407 U.S. at 532).

[32] *Carty*, 56 V.I. at 367 (citing *Hakeem*, 990 F.2d at 760).

[33] *See, People v. Hakim*, Super. Ct. Case No. SX-2009-CR-00435, __ V.I. __, 2014 V.I. LEXIS 67, at *14-17 (V.I. Super. Ct. Aug. 21, 2014) (finding a period of five-year pretrial detention to not be oppressive incarceration); *cf. United States v. Akinola*, Crim. Action No. 11-310 (JLL), 2017 U.S. Dist. LEXIS 2947, at *5-7 (D.N.J. Jan. 9, 2017) (finding a period of five years prejudicial because a witness would not cooperate anymore, not because of the pretrial detention) (unpublished).

[34] Pet. 6.

[35] *See supra* note 29.

[36] Trav. 4.

[37] *Id.* at 5.

unrelated to Petitioner's pre-trial detention – court rules and the judicial process are fashioned to ferret out falsity and bias. Rather, the third interest the speedy trial right is meant to protect serves to aid the defendant by attempting to preserve exculpatory evidence – that the memories of beneficial witnesses may be fresh and not fade, that witnesses not die or disappear in the delay, that helpful evidence not decay in the interim.[38] These are not the sort of reasons Petitioner gives.

¶28      Finally, here, several delays were due to Petitioner's desire to hire an investigator and a forensic pathologist. The continuance on the day of the first jury selection was made by Petitioner so that evidence could be further examined by experts. Rather than impair, these delays enhanced Petitioner's position going into trial. There is no indication by Petitioner that his ability to put on a defense was hampered by the loss of existing evidence or the muddying effects of time. Petitioner bears the burden of proving prejudice and has not met his burden here.

### III.    CONCLUSION

While Petitioner's assertion that his detention was unlawful because it exceeded the seventy-day statutory time frame of the federal Speedy Trial Act must fail as inapplicable, the Court analyzes his assertion that his detention violates his Sixth Amendment rights under the *Barker* factors. The Court recognizes that none of the *Barker* factors are "'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'"[39] The Court finds that the length of time of the detention was lengthy enough to warrant further analysis under *Barker*, and that Petitioner did assert his right to a speedy trial by filing a motion with some chance of success. However, the Court also finds that the reasons for the delay weigh against Petitioner, and, most importantly, Petitioner not only did not make a showing that he was prejudiced in anyway by the delay, but that on the Court's analysis Petitioner in fact may have benefitted from this delay.

Based upon the foregoing, the Petitioner is not entitled to the relief sought in his Petition.

Accordingly, it is hereby

**ORDERED** that Jensen Alexander's Petition for Writ of Habeas Corpus is **DENIED**; and it is further

**ORDERED** that this matter is **CLOSED**; and it is further

---

[38] *See, Carty*, 56 V.I. at 367("If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.").

[39] *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533).

*Alexander v. Government of the Virgin Islands et al.*
**Case No. ST-2018-MC-00081**
**Memorandum Opinion & Order**
**Page 9 of 9**

2020 VI Super 97U

**ORDERED** that a copy of this Memorandum Opinion and Order shall be mailed to Petitioner Jensen Alexander, #1473921, Wallens Ridge State Prison, P. O. Box 759, Big Stone Gap, Virginia 24219, with the following notation on the envelope: **LEGAL MAIL-please open in presence of inmate only**; and a copy thereof directed to Wynnie Testamark, Director of the Virgin Islands Bureau of Corrections and to Assistant Attorney General Aysha R. Gregory.

DATED: 11/23/2020

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**DONNA D. DONOVAN**  10 / 23 / 2020
Court Clerk Supervisor _____